HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

NUE LLC d/b/a NUE SEATTLE,
individually and on behalf of all others
similarly situated,

                           Plaintiff,

    vs.

OREGON MUTUAL INSURANCE
COMPANY,

                     Defendant.

No. 2:20-CV-00676 RSL

**DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

**NOTED ON MOTION CALENDAR:**

**FRIDAY, JUNE 19, 2020**

## I.    RELIEF REQUESTED

Defendant Oregon Mutual Insurance Company ("Oregon Mutual") moves to dismiss Plaintiff NUE LLC's complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6). Plaintiff has not alleged any facts that give rise to insurance coverage for its alleged claims.

Plaintiff's complaint states that Oregon Mutual issued a commercial property policy to Plaintiff which provides coverage for Plaintiff's COVID-19 related losses due to "direct physical loss or damage." Plaintiff, however, admits that no COVID-19 virus has been detected on its premises (Complaint at ¶26). With this admission, Plaintiff's claims fail, as there is no

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 1
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/FAX (206) 624-3585

6000.00526 me21fe2062

evidence or allegation of any "direct physical loss or damage" at "Covered Property" within the plain meaning of the Oregon Mutual coverage grant.  Accordingly, Oregon Mutual submits that the Court should dismiss this action as a matter of law based on the pleadings.

## II.      STATEMENT OF FACTS

### A.      The Complaint

On May 5, 2020, Plaintiff Nue LLC dba Nue Seattle filed its class action complaint against Oregon Mutual (the "Complaint"). (Complaint, ECF 1). The Complaint states that Plaintiff owns and operates a restaurant and bar located at 1519 14th Avenue in Seattle, Washington. Complaint at ¶5. Plaintiff then alleges that due to the COVID-19 virus and a state-ordered mandated closure, Plaintiff was forced to suspend or dramatically reduce its restaurant business operations and suffered damages. Complaint at ¶9.

Plaintiff is now seeking insurance coverage from Oregon Mutual for these economic damages.  The Complaint alleges that Oregon Mutual issued one or more insurance policies to Plaintiff, insuring Plaintiff's property and business practice from November 11, 2019 to November 10, 2020. Complaint at ¶11. Plaintiff argues that Oregon Mutual Businessowners Property Coverage promised to pay Plaintiff for risks of "direct physical loss of or damage" to "covered property" and includes coverage for risks of "loss or damage to" "covered property". Complaint at ¶13. Plaintiff further asserts that Oregon Mutual Businessowners Property Coverage provides Plaintiff with "Business Income Coverage," "Extra Expense Coverage," "Civil Authority Coverage," and "Ingress or Egress Coverage." Complaint at ¶14.

Plaintiff avers that due to a series of certain proclamations and orders issued by Washington Governor Inslee in response to the COVID-19 pandemic, Plaintiff has been unable to have customers enter into its dining room or eat any meals on its premises, thus preventing it

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 2
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

from using its restaurant for its full insured purpose of sit-down dining and full-service bar. Complaint at ¶23-25. Plaintiff, however, admits that "no COVID-19 virus has been detected on its business premises." Complaint at ¶¶26-27. Plaintiff then alleges that its property will continue to sustain loss covered by the Oregon Mutual policy or policies, including but not limited to business interruption, extra expense, interruption by civil authority, and other expenses, and that it is unable to use its property for its intended purposes. Complaint at ¶¶28-29.

The Complaint alleges two causes of action against Oregon Mutual: (1) Declaratory Judgment, seeking a declaration that Plaintiff's and class members losses and expenses resulting from the interruption of their business are covered by the Policy; and (2) Breach of Contract, based upon Oregon Mutual's denial of Plaintiff's claim.

**B.      The Gubernatorial Emergency Proclamations**

The Complaint mentions various orders issued by Washington's Governor Inslee in response to the COVID-19 virus pandemic.  By way of judicial notice, these orders were specifically issued pursuant to RCW 43.06.220(1)(h) to "to help preserve and maintain life, health, property or the pubic peace . . ."  The orders also state:  "Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5)."

On March 16, 2020, Governor Inslee issued Proclamation 20-13 which mandated closure of all public venues, including entertainment and recreational facilities, through March 31, 2020. Complaint at ¶18. This proclamation extended to any public venue in which people congregate for the consumption of food and beverages. *Id.* Governor Inslee's Proclamation 2013, however, does not prohibit prepared food or beverages "legally delivered or taken out of the venue for consumption or the purchasing of groceries that are not consumed within the

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 3
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

premises, more commonly known as drive-through, take-out, and delivery services." Complaint at ¶19.   The Complaint further asserts that on March 23, 2020, Governor Inslee issued Proclamation 20-25, "Stay Home—State Healthy." The proclamation, which amends Proclamation 20-13, requires all people in Washington state to remain in their home or place of residence except to either: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business activities. Complaint at ¶20. The proclamation prohibits "all non-essential businesses in Washington State from conducting business, within the limitations provided herein." *Id.*  Proclamation 20-25, however, allows for restaurants and food services to operate only to "provid[e] delivery or take-away services" and "so long as proper social distancing and sanitation measures are established and implemented." Complaint at ¶21. The Complaint further states that Governor Inslee has extended Proclamation 20-25 through May 31, 2020. Complaint at ¶22.

**C.    The Policy**

Oregon Mutual issued commercial property insurance policy no. BSP 720822 to "Nue LLC dba Nue Seattle," effective 11/10/2019 to 11/10/ 2020 (the "Policy"). The Policy classified the named insured as a "Corporation" and described the business as "Restaurants Casual w/o Lounge."[1] The scheduled insured location is 1519 14th Avenue, Seattle, Washington 98122. *Id.*

The Businessowners Coverage Form of the Policy provides the following coverage grant:

> **SECTION I - PROPERTY**
> **A. Coverage**
> We will pay for direct physical loss of or damage to Covered Property at

---

[1] *See* Stapley Decl., Ex. A. (Nue Policy Declarations page).

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 4
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.[2]

"Covered Property" includes the following: (1) buildings, (2) fixtures and permanently installed machinery and equipment, (3) personal property furnished by the insured as a landlord, (4) personal property used to maintain or service the buildings, and (6) Business Personal Property, including property used in the business or that is in the care, custody or control of the insured.[3]

Covered Cause of Loss" is defined in the form as:

Risks of direct physical loss unless the loss is:
**a.** Excluded in Paragraph **B.** Exclusions in Section **I;** or
**b.** Limited in Paragraph **4.** Limitations in Section I.[4]

The Policy also provides additional coverage for certain enumerated losses including: (1) Business Income, (2) Extra Expense, and (3) Civil Authority as follows:

**f. Business Income**
  **(1) Business Income**
    **(a)** We will pay for the actual loss of Business Income you sustain you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from any Covered Cause of Loss.[5]

\* \* \*

**g. Extra Expense**
  **(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.[6]

\* \* \*

**i. Civil Authority**

---

[2] Stapley Decl., Ex. A , p. 8 (Nue Policy Businessowners Coverage Form).

[3] Stapley Decl., Ex. A

[4] Stapley Decl., Ex. A p. 9.

[5] Stapley Decl., Ex. A p. 12.

[6] Stapley Decl., Ex. A p. 13.

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 5
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101-2570
(206) 624-1800/Fax (206) 624-3585

> We will pay for the actual loss of Business Income you sustain and necessary
> Extra Expense caused by action of civil authority that prohibits access to the
> described premises due to direct physical loss of or damage to property, other
> than at the described premises, caused by or resulting from any Covered Cause
> of Loss.[7]

Nue also alleges coverage under the Policy's Ingress or Egress additional coverage which applies to loss caused when ingress or egress is physically prevented due to direct physical loss or damage to property other than at the described premises.[8] Finally, the policy includes an Ordinance or Law exclusion which precludes coverage for loss caused by the enforcement of an ordinance or law regulating the use of any property.[9]

### III.    EVIDENCE RELIED UPON

Oregon Mutual relies upon the pleadings and records on file with the Court and the argument and authority herein.

### IV.    AUTHORITY AND ARGUMENT

**A.    Legal Standards**

**1.    Standard for Dismissal Under CR 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

---

[7] Stapley Decl., Ex. A p. 14.

[8] Stapley Decl., Ex. A. p. 60 (Nue Policy Businessowner Xtreme Cluster Endorsement).

[9] Stapley Decl., Ex. A. at p 18.

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 6
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/FAX (206) 624-3585

6000.00526 me21fe2062

Accordingly, a complaint may be dismissed based on: (1) absence of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). The Ninth Circuit, however, carves out certain exceptions to this rule. For example, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). *See also Friedman v. AARP, Inc.,* 855 F.3d 1047, 1051 (9th Cir. 2017); *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). This standard would allow the court to review and incorporate the language of the Policy into this matter, particularly given the Complaint's repeated reliance on the Policy's language.

## 2.    Washington Rules of Policy Construction

Plaintiff asks the court to interpret and apply the language to the Policy to the facts stated in the Complaint. Assuming for purposes of this motion that Washington law applies,[10] the plain language of the Policy controls the court's analysis. Interpretation of an insurance contract is a question of law. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). If the plain language of the policy does not provide coverage, courts will not rewrite the policy to do so. *State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 121 Wn. App. 358, 363, 88 P.3d 986 (2004). Washington law also does not "force insurers to pay for losses that they have not contracted to insure." *Polygon Northwest Co. v. American Nat. Fire*

---

[10] Oregon Mutual reserves the right to argue the application of another state's law to the insurance contracts at issue.

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 7
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

*Ins. Co.*, 143 Wn. App. 753, 775, 189 P.3d 777, *review denied*, 164 Wn.2d 1033 (2008). An insurance policy, construed as a contract, is to be given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 181 (2017), *as modified* (Aug. 16, 2017) (quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627 (1994) (quoted citations omitted)).

To establish breach of contract in this matter, Plaintiffs must allege: (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. *See Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35, 334 P.3d 1088 (2014).

**B.      Nue has failed to allege any "direct physical loss or damage" which would trigger coverage under the Policy**

Distilled to its very essence, the basis of Plaintiff's Complaint is that Nue's economic losses that were caused by Governor Inslee's COVID-19 orders constitute "direct physical damage or loss" to "Covered Property". Complaint at ¶27-28. Nevertheless, Plaintiff admits that:  "No COVID-19 virus has been detected on Plaintiff's business premises." Complaint at ¶26. With this admission, Plaintiff acknowledges that its property has not been directly physically damaged in any way by the COVID-19 virus.  Without direct physical loss or damage, and there is no coverage under the Policy.  Dismissal is thus proper.

Washington case law and decisions from other jurisdictions support this conclusion. The Policy requirement of "direct physical loss or damage" is unambiguous and means what it says—there must be some actual direct damage to the covered property, in this case the insured building, for coverage to be triggered. Each word of the phrase "direct physical damage" is to be given its "'plain, ordinary, and popular' meaning." *Boeing v. Aetna Casualty & Surety Co.,* 113 Wn.2d 869, 877, 784 P.2d 507 (1990) (citations omitted).

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 8
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

"Direct" means "direct", "without any intervening agency or step:  without any intruding or diverting factor", *Pinnacle Processing Group, Inc. v. Hartford Casualty Ins. Co.*, 2011 WL 5299557 *5, *6 (W.D. Wash.), as "distinguished from a remote cause."  *Moeller v. Farmers Ins. Co. of Wa.,* 155 Wn. App. 133, 143, 229 P.3d 857 (2010), *aff'd on other grnds,* 173 Wn.2d 264, 267 P.3d 998 (2011).  The word "physical" is also unambiguous. As explained in the most recent edition of *Couch on Insurance*: "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch on Insurance* § 148.46 (3d Ed. 2019). "Damage" in the first-party property context also means actual injury to property. *North Pac. Ins. Co. v. Travelers Cas. Ins. Co. of Am.,* 2016 WL 69819 *5 (W.D. Wash. Jan. 6, 2016).

Based on the above, Washington courts require evidence of actual physical damage to covered property for property coverage to be triggered. For example, in *Villella v. Public Employees Mut. Ins. Co.,* 106 Wn.2d 806, 725 P.2d 957 (1986), the insured sought to recover under two homeowners policies for damage to a dwelling that occurred when the foundation of the house sank. The insured claimed that the foundation problem was caused by a defective drainage system, which caused progressive destabilization of the soil during the effective period of the first policy issued by Pemco. Although the actual damage to the structure occurred after the Pemco policy expired, the insured claimed that the Pemco policy covered the loss because the soil destabilization occurred during the policy period. *Id.* at 810-11. The Washington Supreme Court rejected this argument because the residence itself sustained no damage prior to the expiration date of the first policy. *Id.* at 811-12. In so holding, the court

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 9
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

1    emphasized that for coverage to be triggered under a policy the insured must sustain an actual

2    physical injury or loss, however minute, during the effective period of the policy. *Id.* at 814.

3        A similar ruling was made in *Fujii v. State Farm Fire & Cas. Co.,* 71 Wn. App. 248,

4    857 P.2d 1051 (1993), *review den*, 123 Wn.2d 1009 (1994), where heavy rainfall caused a

5    landslide on a hillside above the insureds' home. *Id.* at 249**.** The insureds requested coverage

6    under their homeowner's policy to cover the costs of preventive measures after a landslide.

7    Based on an expert's opinion that the landslide damaged the "integrated engineering unit" of

8    the home, the insureds claimed they had suffered a "direct physical loss" under the coverage

9    provision of their policy. *Id.* at 249. Citing *Villella*, the court however held that under the plain

10   terms of the policy, coverage would only be triggered by direct physical loss to the dwelling.

11   Accordingly, even though damage may be imminent, there must be some "discernible" damage

12   during the effective policy period.

13       Support for dismissal in this case is also found in *Borton & Sons, Inc. v. Travelers Ins.*

14   *Co.,* 99 Wn. App. 1010 (2000), where the court addressed whether apples were "physically

15   injured" after a roof collapsed in an apple storage facility. The apples were not physically

16   damaged in the event, however, the insured claimed that the fact that the apples had been in the

17   damaged building "eroded confidence" in the quality of the apples and thus there was physical

18   loss. The insured cited several out-of-state cases to support its claim. The Washington Court of

19   Appeals, however, distinguished these cases as being in conflict with Washington law, citing to

20   *Fujii* and *Villella.* The court concluded that because there was no physical damage to the

21   apples, there was no "direct physical loss" covered under the policy.

22       Similarly, in *Washington Mut. Bank v. Commonwealth Ins. Co.*, 133 Wn. App. 1031

23   (2006), the court held that an insured's mistaken belief that a building was about to collapse did

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 10
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

1   not constitute direct physical loss. Because no actual "peril insured against" existed, coverage

2   under the Policies was not triggered. *See also Wolstein v. Yorkshire Ins. Co.,* 97 Wn. App. 201,

3   211–12, 985 P.2d 400 (1999).

4         Applying the above cases to the allegations of the Complaint and the Policy

5   requirements, there is no evidence of actual "direct physical loss or damage" to Covered

6   Property stated in the Complaint. The Complaint makes just one factual allegation with respect

7   to the physical condition of Nue's property:  the admission that "[n]o COVID-19 virus has been

8   detected on Plaintiff's business premises." Complaint at ¶26.  Accordingly, it is impossible to

9   reasonably infer that Nue's Covered Property suffered any "discernible" or "physical" damage.

10  *See Fujii,* 71 Wn. App. at 249; *see also Borton & Sons, Inc. v. Travelers Ins. Co.,* 99 Wn. App.

11  1010 (2000). The Complaint's lengthy and detailed recitation of the ways in which Governor

12  Inslee's emergency proclamations impacted Plaintiff's business does not meet the "direct

13  physical loss or damage" requirements of the Policy.  Dismissal is thus warranted based on the

14  pleadings and Washington law. *See Ashcroft v. Iqbal*, 556 U.S. at 677-78.  Case law from

15  around the country is in accord. *See, e.g., Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL

16  3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v.*

17  *State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. App. 4th 2010)).

18        The same reasoning applies to Plaintiff's claims for Business Income and Extra

19  Expense coverage, particularly where both have the requirement of direct physical loss. It

20  would be untenable for an insurer to extend coverage to businesses for every economic

21  "slowdown" attributable to an outside cause. Nor is that the type of insurance which Plaintiff

22  purchased or pays its premiums for. The additional coverage grants for Business Income and

23  Extra Expense apply only where the insured has sustained "direct physical loss or damage."

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 11
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/FAX (206) 624-3585

6000.00526 me21fe2062

The Business Income coverage explicitly states it is applicable only where a suspension of operations is "caused by direct physical loss or damage to property at the described premises."[11] Similarly, the Extra Expense coverage specifically applies only where such extra costs would not have been incurred "if there had been no direct physical loss or damage to property at the described premises."[12]

The pairing of a "period of restoration" to Business Income and Extra Expense coverage buttresses this argument from a policy interpretation standpoint.[13] The Policy defines "period of restoration" as the period of time that begins "72 hours after the time of direct physical loss or damage…" or "immediately after the time of direct physical loss for Extra Expense Coverage", and ends on the earlier of the date when "the property at the described premises should be *repaired, rebuilt or replaced*…" or "when the business is resumed at a new permanent location."[14] To allow coverage for losses that are not physical, and thus do not require physical repair, rebuilding, or replacement, would render that definition—and as a result, the entire coverage part—not only nonsensical, but infinitely indeterminate. As recognized in *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005), the terms "'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."

In sum, Nue is asking this Court to rewrite the plain terms of the Policy by allowing coverage when there are no factual allegations to show Nue suffered any loss that was "physical in nature". A simple, plain reading of the Policy makes it clear that Nue contracted

---

[11] Stapley Decl., Ex. A. at p. 12.

[12] *Id.* at p. 12.

[13] *Id.* at p. 13.

[14] *Id.* at 29-30 (emphasis added).

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) – 12
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/FAX (206) 624-3585

with Oregon Mutual for coverage only where the loss is attributable to direct *physical* loss or damage to Nue's insured property. *See Xia*, 188 Wn.2d at 181. The Complaint fails to allege any facts whatsoever to suggest that Nue sustained physical loss or damage at its premises. Nue only alleges economic impacts caused by outside events non-physical in nature - reduced sales stemming from Washington Governor Inslee's orders issued to slow the spread of COVID-19. While Nue asserts that it sustained direct physical loss or damage to its property, the Complaint fails to allege any facts from which the Court could draw a reasonable inference that Nue's loss was caused by any direct physical loss or damage to its insured premises. *See Ashcroft v. Iqbal,* supra, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, supra, 550 U.S. at 557). Devoid of further factual enhancement, Nue's formulaic statements that it sustained "physical damage or loss" is insufficient to state a claim against Oregon Mutual. *Id.*

While the COVID-19 pandemic has created an economic hardship for many, a court should not rewrite the policy to "force insurers to pay for losses they have not contracted to insure." *Polygon Northwest Co.*, 143 Wn. App. at 775; *see also English Cove Ass'n*, 121 Wn. App. at 363. Since the Complaint fails to allege any facts that fall within the Policy's coverage provisions, including the additional coverages, Plaintiff's claims fail as a matter of law.

**C.  Plaintiff has failed to allege any other viable theory for coverage arising out of the Governor's orders or COVID-19**

It is likewise apparent that Nue cannot formulate any other basis for coverage of economic loss arising out of the COVID-19 pandemic and the related emergency proclamations issued by Washington Governor Inslee.

**1.  Neither COVID-19 nor the Washington Governor's orders rendered Nue's premises uninhabitable or unusable as a structure**

Oregon Mutual anticipates that plaintiff will attempt to manufacture a claim of physical

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 13
Western District WA No. 2:20-cv-00676 RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

loss by looking to non-Washington cases dealing with uninhabitable structures, such as *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002). Decisions in that vein hold that, if a substance permeates a building without actually damaging it, but the presence of that substance renders the entire structure uninhabitable, the structure may be considered to have sustained a physical loss. The rationale is that the building is damaged as a whole, because it has completely lost its physical utility as such.

Once again, Plaintiff's admission that "[n]o COVID-19 virus has been detected on Plaintiff's business premises" negates any application of *Port Authority* and its progeny to this matter. The *Port Authority* claim related to airborne asbestos particles, and the court explained the threshold inquiry as follows: "When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner." *Id.* at 236. "However, if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss. The structure continues to function—it has not lost its utility." *Id.* "The fact that the owner may choose to seal the asbestos or replace it with some other substance as part of routine maintenance does not bring the expense within first-party coverage." *Id.*

In this case, there is no intrusion of the COVID-19 virus into the building structure. Nue also admits that Governor Inslee's Proclamation 20-25 allows for restaurants to operate to "provid[e] delivery or take-away services" and "so long as proper social distancing and sanitation measures are established and implemented," and that it may operate according to the terms of Governor Inslee's proclamations and orders. Complaint at ¶21 and 23. As such, the premises are not uninhabitable or unusable, and thus *Port Authority* does not apply.

Aside from Nue's admission that its restaurant is, in fact, still habitable and usable,

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 14
Western District WA No. 2:20-cv-00676 RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

1   courts have only applied the *Port Authority* theory to situations where uninhabitability is

2   caused by something within the physical structure of the insured property. *See e.g. Widder v.*

3   *Louisiana Citizens Property Ins. Corp.*, 82 So.3d 294, 296 (L.A. App. 2011) (excessive levels

4   of lead dust that migrated through the house contaminated contents). If the cause is an external

5   or extrinsic force that merely prevents access to the building, coverage does not apply. That

6   follows the policy language, because impeded access to the property is not a direct physical

7   loss *to* the insured property itself. *See e.g. Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302

8   A.D. 2d 1, 3 (N.Y. App. Div. 2002) (no direct physical loss when the city closed an area

9   following a large scaffolding collapse, making a Broadway theatre inaccessible to the public,

10  because the theatre itself was undamaged); *Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v.*

11  *Motors Ins. Corp.*, 126 N.C. App. 698, 702 (N.C. App. 1997) (no direct physical loss where an

12  extreme weather event made the property inaccessible, but did not damage it). Plaintiff's

13  admission that "[n]o COVID-19 virus has been detected on Plaintiff's business premises" once

14  again sounds the death knell to Plaintiff's anticipated position on direct physical loss.

15      The court's decision in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,

16  17 F. Supp. 3d 323 (S.D. N.Y. 2014) is instructive on this point. That lawsuit arose out of the

17  widespread power outages that occurred in and around New York City during "Superstorm"

18  Hurricane Sandy. *Id.* at 324. As the storm approached, utility provider Con Ed preemptively

19  shut off certain service networks to preserve their integrity. *Id.* at 325. As a result, a lower

20  Manhattan building that housed the Newman Myers law firm had no power and was closed to

21  tenants for several days. *Id.* Newman Myers' claimed coverage under its commercial property

22  insurance policy because its employees could not access their office. *Id.*

23      The law firm conceded that its office did not sustain actual structural damage, but

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 15
Western District WA No. 2:20-cv-00676  RSL

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Suite 2000
Seattle, Washington  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

argued that the "the policy term 'direct physical loss or damage' is met by the preemptive closure of its building in preparation for a coming storm . . . because the property at issue was rendered unusable or unsatisfactory for its intended purpose." *Id.* at 329. Rejecting that claim, the court distinguished cases involving issues such as asbestos or ammonia infiltration in properties by recognizing they implicate "some compromise to the physical integrity of the workplace." *Id.* But in the case before it, Con Ed's actions were completely external and did not directly or physically compromise Newman Myers' office. *Id.* at 331. The court thus rejected the claim, stating: "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.*

The Eighth Circuit reached a similar conclusion in *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006). Source Food was a supplier of beef products that sourced meat from Ontario, Canada. *Id.* at 835. In May of 2003, the USDA closed the border to beef importation from Canada after a Canadian cow tested positive for "mad cow" disease. *Id.* As a result, a truck load of Source Food's product, which was not itself contaminated, was denied entry into the U.S. *Id.* Source Food submitted a claim for business interruption coverage to its insurer which denied the claim because Source Food's suspension of operations "must be caused by direct physical loss to Property." *Id.* The Eighth Circuit rejected Source Food's argument, reasoning that "[A]lthough Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner." *Id.* at 838. Because the "embargo on beef products" did not in any

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 16
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

way cause a "direct physical loss to [Source Food's] property," it did not fall within the coverage provisions. *Id.*

In Nue's case, even if Governor Inslee had somehow completely blocked all access to Nue's property—which he did not—that action would not constitute a direct and physical loss to the insured property itself. Nor does the existence of the COVID-19 virus elsewhere in the world, other than inside Nue's property, constitute a direct physical damage or loss to Nue's property. In the words of *Newman Myers*, it would be something "exogenous to the premises" causing its closure, but it would not be—in the words of the policy—a "direct physical loss" to property on the insured premises. *See also Altru Health Sys. v. Am. Prot. Ins. Co.*, 238 F.3d 961, 963 (8th Cir. 2001) ("Because flood waters did not damage the insured building, [the Hospital's] loss occurred when health authorities closed the Hospital for three weeks. This was a business interruption or time element loss, not a property loss."). Nue has admitted both that it is still able to access and use its premises, for delivery and take-away restaurant services, and that there is no known presence of the COVID-19 virus inside or on its insured premises. Accordingly, any argument by Nue that Governor Inslee's orders or the COVID-19 virus itself have caused direct physical loss or damage to its property would be both disingenuous and implausible.

### 2.   The policy's Civil Authority Coverage similarly requires damage to property and an action of civil authority that prohibits access

Nue's claim that there is coverage for its business loss under the Policy's Civil Authority additional coverage also fails as a matter of law. This additional coverage is triggered only when the insured sustains a loss caused by an action of civil authority which "prohibits access to the premises due to direct physical loss of or damage to property, other than at the described premises." The discussion above on "direct physical loss" has direct application to

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) – 17
Western District WA No. 2:20-cv-00676-RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

this provision. The Civil Authority provision explicitly provides that the relevant loss is loss is to property "other than at the described premises."[15]

Other case law supporting the "direct physical loss" requirement for "Civil Authority" coverage is *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.,* 306 A.D.2d 67, (N.Y. App. Div. 2003), which held there was no coverage where "vehicular and pedestrian traffic in the area was diverted, [but] access to the restaurant was not denied; the restaurant was accessible to the public, plaintiff's employees and its vendors." In *Syufy Enter. v. Home Ins. Co. Of Indiana,* 1995 WL 129229, at *2-3 (N.D. Cal.1995) (unpublished), the policy required that access to plaintiff's premises be specifically prohibited by order of civil authority, and as a direct result of damage to or destruction of property adjacent to the premises. The court rejected the insured's claim for business interruption coverage for losses sustained during curfews imposed after the Rodney King verdict because curfews were imposed to prevent potential looting and rioting and not as a result of adjacent property damage.

Courts addressed this issue following 9/11 and rejected claims arising from the FAA's closure of airspace. In *United Air Lines, Inc. v. Insurance Co. of the State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006), the court determined that the government's order to shut down all air traffic was not the direct result of property damage, but rather was "based on the fear of future attacks." "The Airport was reopened when it was able to comply with more rigorous safety standards; the timetable had nothing to do with repairing, mitigating, or responding to the damage caused by the attack on the Pentagon." *Id.* at 135. Based on this, the court determined the insured's loss was not the "direct result" of damage to adjacent premises.

In locations subject to damaging weather events, such as hurricanes, courts have applied

---

[15] Stapley Decl., Ex. A. at p. 14.

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) – 18
Western District WA No. 2:20-cv-00676 RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

policies as written, and rejected insureds' attempts to seek coverage when orders are issued

before property damage occurs. In *Jones, Walker, Waechter, Poitevent, Carrere & Denegre,*

*LLP v. Chubb Corp.*, No. CIV.A. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12,

2010), the court held:

> The Policy's plain language requires that the civil authority prohibit access as a
> "direct result of direct physical loss or damage to property" within one mile of
> the [insured's] premises. The Policy does not insure against impairment of
> operations that occurs simply because a civil authority prohibits access unless
> the civil authority order meets the requirements of the policy—one of those
> requirements is a nexus between the order and certain physical damage.

In *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683, 685 (5th Cir. 2011), New

Orleans restaurateurs sought business interruption coverage for losses sustained in the wake of

the mayor's August 30, 2008, mandatory evacuation order, which was issued as Hurricane

Gustav approached Louisiana. The insurer argued that the policy's civil authority provision did

not provide coverage as the order was not issued "due to direct physical loss of or damage to

property." The insureds countered that since the hurricane had already damaged property in the

Caribbean when the order was issued, this policy requirement was satisfied. The court held that

because there was no evidence of any nexus between the order and physical damage in the

Caribbean or elsewhere, coverage was not available. *Id.*

For Nue to state a claim for applicability of the Policy's Civil Authority additional

coverage, Nue would be required to allege facts which show that Nue's economic loss is the

result of a civil authority, such as Governor Inslee: (1) prohibiting Nue's access to its premises,

and (2) that such prohibition is due to direct physical damage or loss to property *other than*

Nue's insured property. However, Nue admits that Governor Inslee's orders explicitly *do not*

prohibit its access to its property and there are no allegations of direct physical loss or damage

to other property. As aforementioned, the Complaint quotes specific portions of Governor

---

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 19
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

Inslee's Proclamation 20-25 which allows Nue to access and use its restaurant. Complaint at

¶¶21 and 23. Further, Nue cannot and does not claim that Governor Inslee's orders were issued

because of damage to any other property. The Complaint asserts exactly the opposite – that

Governor Inslee's orders were issued as a result of the COVID-19 virus. Complaint at ¶17.

Thus, Nue has failed to allege any facts which would establish a claim that the Policy's Civil

Authority coverage is applicable to its loss.

### 3. The policy's Ingress or Egress additional coverage similarly requires direct physical loss or damage to property other than Nue's insured property

Plaintiff's assertion that there is coverage for its business loss under the Policy's Ingress

or Egress additional coverage also fails as a matter of law. The Policy provides additional

coverage on a limited basis as follows:

> A. We will pay for the actual loss of Business Income you sustain and necessary
> Extra Expense caused when ingress or egress to the described premises is
> physically prevented due to direct loss or damage to property, other than at
> the described premises, caused by or resulting from any Covered Cause of
> Loss.[16]

Like the "Civil Authority" coverage discussed above, this coverage is contingent upon the

finding of "direct loss or damage to property" other than at the described premises.

The Washington Court of Appeals addressed this provision in *Washington Mut. Bank v.*

*Commonwealth Ins. Co.*, 133 Wn. App. 1031 (2006). The case involved bank losses based on

an erroneous engineering report stating that the building was in danger of collapse. The policy

at issued included the following in its "Perils Insured Against" section:

> Ingress/Egress: This policy is extended to cover the loss sustained during the
> period of time when, in connection with or following a peril insured against,
> access to or egress from real or personal property is impaired. This extension is
> limited to a maximum period of 30 days.

---

[16] *See* Stapley Decl., Ex. A.

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 20
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON  98101-2570
(206) 624-1800/FAX (206) 624-3585

6000.00526 me21fe2062

*Id.,* at *2.  Initially, the court found:

> The plain language of the "perils insured against" clause requires a direct physical loss of or damage to insured property. The language of this clause specifies that the loss must be "direct physical loss." The clause does not use the word "loss" in the abstract.

*Id.,* at *3. The court held that even though evacuation was recommended, "there was no actual physical loss to the property and no actual damage to the property", citing to *Wolstein v. Yorkshire Ins. Co.,* 97 Wn. App. 201, 211–12, 985 P.2d 400 (1999) (noting that language in a similar "all risks" policy required the insured property to sustain actual damage or physical loss to invoke coverage). The court then concluded that the ingress/egress provision did not apply because there was no direct physical loss or damage at play: "Thus, although the 'in connection with or following' causation language in the ingress/egress provision may be broad, coverage under that provision was not triggered absent a peril insured against." *Commonwealth Ins.* at *3.

As aforementioned with respect to the Civil Authority additional coverage, Nue has failed to allege any actual physical loss or damage to other property. Moreover, Nue has admitted that its ingress or egress to its premises has not been "physically prevented" as required by the plain language of the Policy's Ingress or Egress additional coverage provision. As aforementioned, Nue has admitted that it is physically permitted ingress and egress into its restaurants so as to operate its business with respect to preparation of food for either delivery or take-out services. Complaint at ¶¶19, 21 and 23. Thus, Nue has failed to state a claim for coverage based upon the Ingress or Egress additional coverage provision of the Policy.

**D.    Even if there was otherwise coverage under the Policy, such coverage would be precluded by the Policy's Ordinance or Law Exclusion**

Even if Nue had stated a claim with respect to any of the aforementioned Policy

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) – 21
Western District WA No. 2:20-cv-00676  RSL

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

6000.00526 me21fe2062

provisions, such coverage for Nue's loss would be excluded by applicable exclusions in the

Policy. Covered Cause of Loss" is defined in the form as:

> Risks of direct physical loss unless the loss is:
> **a.** Excluded in Paragraph **B.** Exclusions in Section **I;** or
> **b.** Limited in Paragraph **4.** Limitations in Section I.

The Policy then includes the following exclusionary language:

> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> **a. Ordinance or Law**
>
> **(1)** The enforcement of any ordinance or law:
> **(a)** Regulating the construction, *use*, or repair *of any property*;…[17]

Washington courts have upheld the viability of similar exclusions. *See Allemand v. State Farm Ins. Cos.,* 160 Wn. App. 366, 248 P.3d 111 (2011).

Applied to this matter, the Complaint alleges that "[B]y order of Governor Inslee, restaurants including Plaintiff were prohibited from operating their businesses except according to the terms of the proclamations and orders." *Id.* at ¶23. Governor Inslee's emergency proclamations plainly constitute an "ordinance or law…regulating the…use…of any property" within the terms of the exclusion. The orders explicitly state that they are issued in accordance with RCW 43.06.220(1)(h), which provides that the governor after proclaiming a state of emergency may…*issue an order prohibiting*…such other activities as he or she reasonably believes should be prohibited…" *See* RCW 43.06.220(1)(h) (emphasis added). Additionally, Governor Inslee's orders state that "[V]iolators of this order may be subject to criminal

---

[17] *See* Stapley Decl., Ex. A. at p. 18 (emphasis added).

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 22
Western District WA No. 2:20-cv-00676 RSL

6000.00526 me21fe2062

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101-2570
(206) 624-1800/Fax (206) 624-3585

penalties pursuant to RCW 43.06.220(5). RCW 43.06.220(5) provides that "[A]ny person willfully violating any provision of any order issued by the governor under this section is guilty of a gross misdemeanor." Nue also alleges that Governor Inslee's orders have made it unable to "have customers enter into its dining room or eat any meals on its premises", which allegedly impacts Nue's use of the property. Complaint at ¶24. To the extent this is the case, then the "Ordinance or Law" exclusion applies.

Thus, even if Nue's Complaint stated a claim for coverage under the Policy's main insuring agreement or its additional coverages for Business, Income, Extra Expense, or Civil Authority, such coverage would be precluded by the Policy's Ordinance or Law Exclusion.

## V.   CONCLUSION

The Complaint contains no allegations, or set of facts, that if proven, would entitle plaintiff to any relief against Oregon Mutual.  Therefore, dismissal of this action is appropriate in accordance with FRCP 12 (b)(6).

DATED this 28th day of May, 2020.

SOHA & LANG, P.S.


By:___/s/Lind Stapley_____
    R. Lind Stapley, WSBA # 19512
    Rachel A. Rubin, WSBA # 48971
    Attorneys for Defendant Oregon Mutual
    Insurance Company

DEFENDANT OREGON MUTUAL INSURANCE COMPANY'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6) – 23
Western District WA No. 2:20-cv-00676  RSL

6000.00526 me21fe2062